PRINCE GEORGE CENTER, INC. and MBL Life Assurance Corporation, On Behalf of Themselves and All Others Similarly Situated

v.

UNITED STATES GYPSUM COMPANY, National Gypsum Company, W.R. Grace & Co.-Conn., U.S. Mineral Products Co. and Asbestospray Corporation.

Appeal of The PRUDENTIAL INSUR-ANCE COMPANY OF AMERICA, Pic Realty Corporation and 745 Property In-vestments (Collectively "Prudential").

Superior Court of Pennsylvania.

Argued Sept. 10, 1997.
Filed Nov. 27, 1997.

142 ■

Harold I. Goodman, Philadelphia, for appellants.

\* Retired Justice assigned to the Superior Court.

Harvey S. Kronfeld, Bala Cynwyd, for Prince George Center, appellee.

J. Gordon Cooney, Jr., Philadelphia, for U.S. Gypsum & National Gypsum, appellees.

Lawrence T. Hoyle, Jr., Philadelphia, for W.R. Grace, appellee.

Before BECK, JOHNSON and MONTEMURO,\* JJ.

JOHNSON, Judge:

In this appeal we consider whether the notice procedure employed in a class action conducted in accordance with the Pennsylvania Rules of Civil Procedure was constitutionally sufficient to bind an absent plaintiff class member. We also consider whether the vigorous litigation between an absent plaintiff and the same defendants in a parallel out-of-state action requires the absent plaintiffs' exclusion from the class of settling plaintiffs after entry of final judgment. We conclude that the notice afforded the Prudential Insurance Company of America (Prudential) satisfied the requirements of due process. We also conclude that the distinguished trial judge acted entirely within his discretion in denying Prudential's petition for exclusion from the plaintiff class or, in the alternative, a determination that its opt-out notice was timely. Accordingly, we affirm the order denying Prudential's petition and supplement thereto.

This class action was instituted May 30, 1986, by Peter Kalkus, an owner of Virginia office buildings, on behalf of owners of office buildings having United States Government tenants, against an array of asbestos manufacturers. On April 18, 1990, Prince George Center, Inc. intervened as class representative after Kalkus's claim was ruled barred by a Virginia statute of repose. On April 16, 1992, the Philadelphia Court of Common Pleas certified the class as follows:

... private owners of buildings (within the District of Columbia and the fifty United States) that were leased or subleased in whole or in part to the Federal Government or any agency, department or unit thereof, on or after May 30, 1986, in which

buildings, asbestos containing material was or is present.

Memorandum and Order, Kremer, J., dated April 16, 1992; R.R., Vol. I, at 268a. Notice of this order was never required. On May 7, 1993, the court ordered this action to proceed on an opt-out basis, as provided in Pa. R.Civ.P. 1711(a).

By early 1995, twenty-four of the twenty-eight non-bankrupt defendants in this action had executed settlement agreements with plaintiffs' counsel, contingent upon court approval. Settlement funds totaling $3,782,400 and a cash rebate program had been advanced. To facilitate court approval of these settlements, the court decertified the plaintiff class in February 1995, and certified a settlement class. The court conditionally certified a separate trial class, pursuant to Pa.R.Civ.P. 1710(d), to continue the litigation against the four non-settling defendants. The new classes were defined as:

> ... a Settlement Class consisting of all private owners of any building or buildings in the United States that were leased or subleased in whole or in part to the federal government or any agency, department or unit thereof at any time between May 30, 1984 and December 22, 1994, inclusive, in which building(s) asbestos or asbestos-containing materials were present.

And:

> ... a Plaintiff Class for purposes of trial consisting of all private owners of buildings in the United States who, at any time between May 30, 1984 and December 22, 1994, inclusive, (1) leased or subleased their building(s) in whole or in part to the United States or any agency thereof; and, (2) at any time during such period their building(s) contained asbestos or asbestos products; and, (3) the asbestos or asbestos products in their building(s) were manufactured, sold or installed by U.S. Gypsum and/or U.S. Mineral Products Company and/or W.R. Grace & Company and/or Asbestospray Corp., or their building(s) is (are) in a state whose law permits such an owner to establish joint and several liability for conspiracy or concert of action, against not only the maker or seller of asbestos or asbestos products in his/her/its

building(s) but also, others who acted in concert or conspiracy with him/her or it to misrepresent or withhold from the public, knowledge of the hazards of asbestos.

Amended Order, Bonavitacola, J., dated February 17, 1995, at ¶¶ 2, 4, attached as Exhibit G to Affidavit of Prudential's Counsel in Support of Petition for Declaratory Relief.

In October 1987, Prudential, as an owner of commercial buildings, sued the trial class defendants in the United States District Court for the District of New Jersey. Prudential's claim was for damages incurred and to be incurred as a result of asbestos in its buildings. By stipulation of the parties, on March 26, 1995, this suit was limited to eighteen Prudential buildings.

In February 1995, the Pennsylvania trial court ordered that notice of the settlements and their terms be sent to the settlement class and scheduled a hearing for objections and approval of the settlements for May 19, 1995. Class members could opt out of the settlement class by filing a written election with the court by April 18, 1995. A summary notice of the settlement was published twice in the Wall Street Journal and eight major metropolitan newspapers. A more detailed notice was sent by first class mail to 36,383 potential class members appearing on a list compiled by the General Services Administration and the United States Postal Service which contained the names and addresses of federal agency landlords. Prudential was identified as the owner of seven properties on this list and notices were mailed to each. None of these properties were involved in Prudential's New Jersey litigation.

On April 28, 1995, Steven A. Lauer, a member of Prudential's house counsel staff, executed the form to opt out of the settlement class on behalf of Prudential. On May 10, 1995, Robert Gilson, counsel to Prudential, drafted a letter to the Philadelphia Prothonotary for Lauer's signature indicating that Prudential did not want to be a member of any future class in the Prince George Center, Inc. action unless Lauer received notice and filed an affirmative election to participate. This letter was never sent.

By April 1996, the four remaining defendants in this action had executed settlement agreements. The trial court ordered that notice be given and that an approval hearing be held July 24, 1996. Exclusion requests were to be filed by July 9, 1996. Notice was disseminated in May 1996 to the same addresses as the earlier settlement notices, advertised in the same newspapers as the earlier notice, posted on the internet, and announced in five trade publications. The notice of settlements with the trial defendants stated:

> If you are already a party to another lawsuit against Grace, U.S. Gypsum, U.S. Mineral and/or Asbestospray not involving personal injury, you must nonetheless file an Exclusion Request; otherwise, you will be bound by the Settlement Agreement and the Final Judgment Order, and your lawsuit will be enjoined.

Notice of Proposed Settlements, Bonavitacola, J., dated April 24, 1996, at ¶ 24, attached as Exhibit L to Affidavit of Prudential's Counsel in Support of Petition for Declaratory Relief. Seven notices were sent to the same Prudential buildings as the earlier notice, and the Post Office returned two of these as undeliverable.

Prudential did not return an exclusion request, nor did it appear at the July 24 hearing. 289 members of the trial class opted out of the settlement, an important number since Grace and Gypsum had reserved the right to rescind the agreement if 500 exclusion requests were received. The court approved the settlements at the hearing and judgment was entered in favor of the four defendants on August 13, 1996. The settlement required $7,740,000 to be paid into the fund established by the twenty-four defendants who had settled previously. The judgment served as a release of the four defendants from any claims that were or could be asserted by the remaining class members and limited those plaintiffs' recoveries to the settlement fund.

Immediately after the appeal period for this judgment expired, the four trial class defendants informed Prudential's New Jersey counsel of the August 13 judgment, claiming that it applied to eight of the buildings involved in the New Jersey litigation. On September 30, 1996, Prudential petitioned the trial court for a declaration that it was not a class member. This petition was denied on November 27, 1996. Prudential petitioned for reconsideration on December 10, 1996. The trial court declined to reconsider this order on December 17, 1996, and this appeal followed.

Prudential raises multiple issues in this appeal. Initially, it argues that the trial court erred in including Prudential as a class member without affording it notice consistent with due process. Prudential also argues that the trial court erred in determining that it was a member of the trial class because it had provided timely and effective notice to the defendants of its intent to opt out of the trial class. Prudential further argues that the trial court abused its discretion in denying equitable relief from the judgment on the facts presented.

Prudential also makes broad attacks on the certification of the trial class and the approval of the settlements reached between the class representative and the trial class defendants. Prudential challenges the adequacy of the settlements and class counsel's representation of its interests. It also claims the certification of the trial class was improper under the Pennsylvania Rules of Civil Procedure. Finally, Prudential argues that the conduct of the trial class defendants in obtaining the settlements was fraudulent, and that they have taken positions in related litigation which estopped them from opposing Prudential's petition.

■ The trial class defendants responded with a motion to quash this appeal except the single issue challenging the trial court's discretion in refusing to allow Prudential to belatedly exclude itself from the trial class. This Court will only consider those issues properly raised in Prudential's petition filed September 30, 1996, and disposed of by the trial court's order of November 27, 1996, to wit: whether the notice afforded Prudential was constitutionally adequate; whether pending litigation altered Prudential's status as a class member; and whether the trial court abused its discretion in refusing to

grant Prudential relief from this judgment. The remaining arguments were pursued initially in Prudential's petition for reconsideration. This Court has no jurisdiction over a trial court's denial of a petition for reconsideration. *Estate of Merrick,* 432 Pa. 450, 454, 247 A.2d 786, 787–88 (1968); *Seibel v. Allstate Insurance Co.,* 346 Pa.Super. 384, 392, 499 A.2d 666, 670 (1985); *Provident Nat'l Bank v. Rooklin,* 250 Pa.Super. 194, 378 A.2d 893 (1977). We hold that the issues raised initially in Prudential's petition for reconsideration are similarly beyond the scope of our jurisdiction and we decline to consider them in this appeal. *See* Pa.R.A.P. 302(a).

█ Prudential argues that its vigorous devotion of time and resources to the prosecution of the New Jersey litigation during and beyond the time in which it was required to affirmatively seek exclusion from the trial class constituted a de facto withdrawal from that class. Prudential further argues that because counsel for the trial class defendants was the same in both the Pennsylvania and New Jersey actions, the defendants were estopped from asserting that Prudential did not withdraw from the class.

Essentially, Prudential petitioned the trial court to declare that its continued litigation in New Jersey was effective to exclude it from the settlements. Prudential styles this issue one of first impression in Pennsylvania. The nature of the procedure utilized by the trial court for determining class membership undermines this view of the facts.

█ In Pennsylvania all class members are plaintiffs in the action upon the filing of the complaint. *Alessandro v. State Farm Mut. Auto. Ins. Co.,* 487 Pa. 274, 279 n. 9, 409 A.2d 347, 350 n. 9 (1979). A trial court is empowered to require parties wishing to be excluded from a particular class to file of record, by a specific date, "a written election to be excluded from the class." Pa.R.Civ.P. 1711(a). The United States Supreme Court has sanctioned the use of this "opt-out" procedure for all types of class action plaintiffs, explaining: "If ... the plaintiff's claim is sufficiently large or important that he wishes to litigate it on his own, he will likely have retained an attorney or thought about filing suit, and should be fully capable of exercising his right to 'opt out.'" *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 813, 105 S.Ct. 2965, 2975, 86 L.Ed.2d 628 (1985).

Prudential was aware of the existence of this action and the proper method for extricating itself from it. Indeed, it utilized the form provided with the notice of the first proposed settlement to decline participation in that settlement. Prudential admits that it received professional advice on this aspect of the litigation and had a letter drafted which would have avoided the possibility of it unwittingly being bound to any future judgment in this case. Prudential cannot now claim that its continued litigation of another decade-old suit against the same defendants, not limited to the claims subject to this action, was intended as a sufficient notification of its desire to exclude itself.

█ The prevailing federal view is that pending litigation is no substitute for compliance with judicially ordered exclusion procedures. *See In re Prudential Securities Litigation,* 164 F.R.D. 362, 370 (S.D.N.Y.1996), *aff'd* 107 F.3d 4 (2d Cir.1996); *Supermarkets General Corp. v. Grinnell Corp.,* 59 F.R.D. 512, 513, *aff'd per curiam,* 490 F.2d 1183, 1186 (2d Cir.1974). *See also In re National Student Marketing Litigation v. Barnes,* 530 F.2d 1012, 1015 (D.C.Cir.1976)(fact of pending litigation by particular plaintiffs raised no requirement of specific, additional notice relating to opt-out procedures). *But see McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62, 68–69 (N.D.Cal.1976) (because notice was not specific as to effect of settlement on pending litigation nor explicitly mandated exclusive opt-out procedure, failure to affirmatively opt-out was no bar to continued litigation in separate forum). A contrary Pennsylvania rule is not desirable. When numerous similar claims exist, parallel litigation will likely be the rule, not the exception. A prime purpose of the class action is to promote judicial economy by reducing the amount of duplicative litigation in our courts. Further, defendants are often willing to settle with a class representative for the very reason that they hope to gain relief from otherwise endless litigation instituted by similarly situated plaintiffs. The trial

class defendants manifested that desire, in this case, by explicitly bargaining for a 'blow-out' provision, which would have enabled them to avoid the settlement if five hundred potential individual claimants filed exclusion requests. We hold that a pending lawsuit is not effective to exclude a party from a class action conducted under Pa.R.Civ.P. 1711(a).

∎ Accordingly, this Court must merely decide whether the trial court acted within the limits of its discretion when it declined Prudential's petition in equity to afford it relief from its own failure to avoid a judgment entered against it.

∎ Generally, petitions for relief from judgments are addressed to the sound discretion of the trial court. *See, e.g., Sklar v. Harleysville Ins. Co.*, 526 Pa. 617, 619, 587 A.2d 1386, 1387 (1991); *Castings Condominium Ass'n v. Klein*, 444 Pa.Super. 68, 72, 663 A.2d 220, 223 (1995). A trial court abuses its discretion when it misapplies the law, or when its decision is "manifestly unreasonable" and not a mere error in judgment. *Castings Condominium, supra.*

The standards guiding a trial court's discretion in opening default judgments provide a useful yardstick for assessing the trial court's order. This Court has emphasized that a balancing of the prejudice to the respective parties is the essence of such an equitable decision. *See Provident Credit Corp. v. Young*, 300 Pa.Super. 117, 129–31, 446 A.2d 257, 263–64 (1982)(en banc). We have clarified, however, that a court will not weigh competing claims of prejudice unless the party seeking such equitable relief first establishes that he or she moved promptly to cure their default and that a reasonable excuse for the default existed. *Castings Condominium, supra*, at 77, 663 A.2d at 225. This standard applies when a defendant seeks relief from a monetary judgment entered without benefit of adversary proceedings. Certainly no lesser standard should apply in a case such as this, where the defendant obtains the judgment under attack in exchange for a substantial settlement payment.

We decline to take issue with the trial court's determination that Prudential offered no reasonable excuse for its failure to timely act. Prudential had notice of the substance of this action in April 1995. It obtained the advice of counsel and was presumably aware of the ramifications of a failure to opt out of the action. It is undisputed that further notice, specifically concerning the instant settlement, was delivered to five separate Prudential properties in May 1995. Prudential has offered no explanation as to how these notices failed to reach any responsible person in its organization as the first notice apparently did, nor does Prudential adequately explain its failure to monitor this litigation after filing its exclusion request relating to the first settlement. Instead, Prudential relies on the failure of its opponents to affirmatively advise it that the clock was running. This Court has refused to recognize a litigant's obligation to cure an opponent's unilateral mistake. *See id.* at 75–76, 663 A.2d at 224 (party seeking relief from default judgment cannot rely on opponent's silence as a reasonable excuse for its own mistake regarding necessity of action). *Accord, Supermarkets General Corp., supra*, at 514 (the district court rejected a heightened notice requirement in cases of pending litigation, explaining that "[t]he failure of the internal procedures of the plaintiff to see that the notice reached the proper person is no excuse"). The author of a leading treatise on class actions offers this advice:

> Plaintiffs who have previously instituted an independent action are not automatically excluded as potential members of a subsequently filed class action that is upheld by the court, so counsel who file individual actions should consider entering an appearance in the class action in order to secure essential court papers, particularly the Rule 23(c)(2) notice, which contains the option for exclusion.

HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 16.13, at 16–73 (3d ed.1992). The trial court's conclusion that, "[t]o the extent [Prudential] operated in the dark, it pulled the curtain down on itself", was not an abuse of discretion. Opinion, Bonavitacola, J., dated March 26, 1997, at 26.

The federal courts have been confronted with similar belated requests for exclusion

from class action settlements. The prevailing analysis in the federal realm is one of "excusable neglect," the determination of which rests within the discretion of the trial court. *Supermarkets General Corp. v. Grinnell Corp.*, 490 F.2d 1183, 1186 (2d Cir.1974) (per curiam); *In re Prudential Securities Litigation, supra,* at 369; *In re Del–Val Financial Corp. Securities Litigation,* 154 F.R.D. 95, 96 (S.D.N.Y.1994); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust,* 120 F.R.D. 51, 52 (N.D.Ill.1988). As one court explained, under the Federal Rules of Civil Procedure, "[a]dequacy of notice to the class as a whole determines the binding effect of a class settlement on an individual member, [but] a Court retains the power to allow claimants to file late opt-out requests...." *In re Prudential Securities Litigation, supra,* at 368 (citations and quotation marks omitted). To establish excusable neglect, a moving party must show both good faith and a reasonable basis for not acting within the time provided for exclusion from the class. *Id.* at 369.

> Even upon a finding of excusable neglect, it remains within the district court's sole discretion whether or not to grant the extension. Factors to be considered in making this decision include: the interests of the movants, the interest of the defendants, and the impact of granting the requested extensions on the Settlement itself.

*Id.* (citation omitted).

The United States Court for the Southern District of New York has considered two substantially similar cases under the excusable neglect standard. In *In re Prudential Securities, Inc., supra,* a party seeking a late exclusion argued that Prudential's failure to inform them of the *existence* of a class action during the course of parallel litigation estopped Prudential from seeking a termination of the individual suit upon settlement of the class action. *Id.* at 369. They further argued that Prudential would not be prejudiced by their late exclusion because Prudential was aware of their intention to continue their individual actions. *Id.* The court found these arguments to be meritless, observing that pending litigation uniformly does not excuse a class member from filing an exclusion request. *Id.* at 370. The court then explained the meaning of prejudice in this context, noting that Prudential "bargained for the precise finality that these movants now seek to undermine." *Id.*

Similarly, in *Langford v. Devitt,* 127 F.R.D. 41 (S.D.N.Y.1989), an attorney argued that, though he had notice of a federal class action and made every effort to monitor it in light of his own litigation in an Ohio state court, he should be allowed to opt out late because he had no actual notice of the deadline for exclusion. He urged the court to grant his request because "the defendants participated in both the New York and Ohio litigation knowing that [he] had been deemed a class member in the New York litigation, knowing that there was a risk that the New York litigation might be used to preclude [his] litigation in Ohio and, most egregious of all, knowing [he] was unaware of this status." *Id.* at 43. The court found this argument "disingenuous," reasoning that his experience as an attorney and his actual awareness of the class action made him able "to understand the significance and potential effects of the class action, the means available to review the details of the class action, and the legal options regarding participation...." *Id.* at 45. The court refused to permit him to rely on his own inaction to justify a late exclusion from the class. Here, Prudential has failed to convince us that the trial court was barred from reaching a similar conclusion on the indistinguishable facts of this case. *See generally Janicik v. Prudential Ins. Co.,* 305 Pa.Super. 120, 127 n. 3, 451 A.2d 451, 454 n. 3 (1982) (explaining that federal precedent is "instructive in construing Pennsylvania's class action rules" due to the heavy consideration of the Federal Rules and federal precedent in their drafting). The trial court's refusal of equitable relief was not an abuse of discretion.

■ Prudential argues that the trial court violated its due process rights by attempting to bind Prudential to the court's judgment without providing adequate notice to enable it to exclude itself from the settlement. The United States Supreme Court has explained

the process due to those in Prudential's position:

> [T]o bind an absent plaintiff concerning a claim for money damages or similar relief at law, [a forum state] must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

*Phillips Petroleum Co. v. Shutts, supra,* at 811–12, 105 S.Ct. at 2974–75.

Prudential contends the notice it received was not the best that could have been accomplished. It identifies three places where notice could have been sent which were better suited to insuring that persons responsible for making decisions concerning Prudential's numerous properties were actually apprised of the need for action. First, Prudential argues that class counsel should have referred to the exclusion notices received in response to the first round of settlements when compiling the second mailing list, whereby notice would have been sent to Stephen Lauer, Prudential's in-house counsel at its Newark headquarters. Second, Prudential argues that notice to any particular property of Prudential, which owns real estate throughout the nation, is inadequate. It maintains that significant decisions respecting property should reasonably be expected to be made at corporate headquarters, the address of which is readily obtainable, and that one intending to provide the best notice would certainly have mailed it there. Third, Prudential claims that counsel for the trial class defendants also represented these parties in the New Jersey litigation, and that they assumed a contractual duty, pursuant to the settlement agreements, to ensure that notice for Prudential was sent to its counsel in the New Jersey action.

We first observe that Prudential received actual notice of this class action. Further, under Pennsylvania law, Prudential's assertion that it has no record of receiving the five settlement notices at separate locations is insufficient to overcome the presumption that these notices were, in fact, delivered. *See Kulick v. Com., Dept. of Transportation,* 666 A.2d 1148 (Pa.Cmwlth.1995), *appeal denied,* 544 Pa. 616, 674 A.2d 1077 (1996). While the adoption of the best practicable means of accomplishing actual notice is the responsibility of the nominal plaintiff in a class action, actual receipt of notice is not the measure of the constitutionality of the notice method employed. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Moreover, "actual receipt of class notice is not necessary in order to bind an absent class member to a final judgment." *In re Prudential Securities, Inc., supra,* at 369. While we believe Prudential's actual notice is sufficient to dispose of this claim, we will address the notice procedures employed in light of Prudential's challenges.

Initially, we note that Prudential completely misstates the burdens imposed on class counsel and the trial court in effecting notice of a class action settlement. Prudential cites to *Geier v. Tax Claim Bureau of Schuylkill County,* 527 Pa. 41, 588 A.2d 480 (1991), and *Tracy v. Chester County Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985) for the proposition that a reasonable effort must be made to ascertain the actual whereabouts of a property owner, including searching government records. These cases involved government foreclosure actions against property owners. The United States Supreme Court has stated that "[b]ecause States place fewer burdens upon absent class plaintiffs than they do upon absent defendants ..., the Due Process Clause need not and does not afford the former as much protection from state-court jurisdiction as the latter." *Phillips Petroleum, supra,* at 811, 105 S.Ct. at 2974. Accordingly, *Geier* and *Tracy* are inapposite to our determination in this case. Prudential

essentially insists upon receiving the best notice that could be afforded based on its unique circumstances. The true measure of the constitutionality of class member notice under *Phillips Petroleum* must necessarily focus on what is "practicable" in the circumstances where equally effective notice must be sent to over 36,000 potential class members.

Prudential argues that notice should have been sent to the addresses listed on the few hundred exclusion forms received by the court in the first round of settlements. These exclusion notices were received in response to the notice sent to everyone the federal government identified as a landlord of a federal agency in the years in question, presumably the best way of identifying this class. We think it eminently practical for the court and class counsel to have assumed that the previous notice was effective to reach at least those parties that had actually responded. If any person or entity requesting exclusion disagreed, they properly could be expected to enter an appearance or otherwise alert the court as to their preferred address. In giving notice of the second settlement, the court and class counsel justifiably focused their efforts on reaching those persons and entities whose addresses were not included in the first round. To this end, publication notice was expanded to include five trade publications and an internet site. We find that the widespread publication of notice utilized by class counsel was a constitutionally sufficient means of reaching parties who were not adequately identified through the government's list. *Mullane, supra.*

Prudential's contention that notice should have been mailed to its Newark headquarters because it was easily identifiable warrants little discussion. It is the antithesis of practicability to require that class counsel attempt to identify the actual location of the 36,000 individual and corporate lessors identified from the properties on the federal government list.

Prudential's third contention, that counsel for the trial class defendants deprived it of due process by failing to satisfy an alleged contractual duty to alert class counsel to the identity of Prudential's New Jersey counsel, is meritless. The *"plaintiff,* not defendant, in a plaintiff-class action is responsible for providing notice to the members of the defined class." *Langford v. Devitt, supra,* at 45 n. 1, citing J. Moore & J. Kennedy, 3B Moore's Federal Practice ¶ 23.55, at 23–423 to 23–424 (2d ed.1987). Pa.R.Civ.P. 1712(c) explicitly charges the plaintiff with the sole obligation of preparing class notice unless otherwise directed by the court. Defendants' alleged contractual duty does not alter the minimal notice requirements under the Due Process Clause. Therefore, we conclude that Prudential received constitutionally adequate notice in this case.

Order **AFFIRMED.**